IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 06–cv–00044–EWN–CBS


NUCLEAR CARDIOLOGY SYSTEMS,
INC., a Colorado corporation,

      Plaintiff,

v.

HAMID A. HAI, M.D.,

      Defendant.

---

## ORDER AND MEMORANDUM OF DECISION

      This is a contract dispute.  Plaintiff Nuclear Cardiology Systems asserts that Defendant Hamid Hai, M.D. breached a contract for purchase of certain equipment and services.  This matter comes before the court on "Nuclear Cardiology Systems, Inc.'s Substituted Motion for Summary Judgment and Memorandum of Authorities," filed October 18, 2006.  Jurisdiction is premised upon diversity of citizenship, pursuant to 28 U.S.C.A § 1332 (West 2007).

### FACTS

*1.*    *Factual Background*

      On May 27, 2004, the parties entered into a contract for the purchase and sale of equipment used to diagnose heart disease (the "Agreement").  (Nuclear Cardiology Sys., Inc.'s

Substituted Mot. for Summ. J. and Mem. of Authorities, Statement of Undisputed Material Facts

¶¶ 2–3 [filed Oct. 18, 2006] [hereinafter "Pl.'s Br."]; *admitted in relevant part at* Hamid S. Hai,

MD's [sic] Resp. to Nuclear Cardiology Sys., Inc.'s Substituted Mot. for Summ. J., Resp. to

Statement of Undisputed Facts ¶¶ 2–3 [filed Oct. 18, 2006] [hereinafter "Def.'s Resp."].)  The

equipment and services that were the subject of the Agreement included a remanufactured gamma

camera, a new computer system, training, licensing, and a service plan (the "System").  (*Id.*,

Statement of Undisputed Material Facts ¶ 3; *admitted in relevant part at* Def.'s Resp., Resp. to

Statement of Undisputed Facts ¶ 3.)  Defendant reserved the option to pay a lump cash sum for

the System or to finance his purchase.  (*Id.*, Statement of Undisputed Material Facts ¶ 5; *admitted

at* Def.'s Resp., Resp. to Statement of Undisputed Facts ¶ 5.)  The parties agreed that

independent of the method of payment, the transaction would be completed and the equipment

delivered within two years of the Agreement's execution.  (*Id.*, Statement of Undisputed Material

Facts ¶ 6; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Facts ¶ 6.)

    In connection with executing the Agreement, Defendant informed Plaintiff that he desired

nuclear imaging equipment that was between five and ten years old and would perform well in his

nuclear cardiology practice.  (Def.'s Resp., Statement of Additional Disputed Facts ¶ 7; *admitted

at* Nuclear Cardiology Sys., Inc.'s Reply in Support of Substituted Mot. for Summ. J., Resp.

Concerning Disputed Facts ¶ 7 [filed Nov. 20, 2006] [hereinafter "Pl.'s Reply"].)  Plaintiff told

Defendant that it was selling the equipment Defendant desired at a price below the prevailing

market price for equipment of its type and quality and Defendant could not obtain such equipment

for a lower price anywhere else.  (*Id.*, Statement of Additional Disputed Facts ¶¶ 1–2; *admitted at*

Pl.'s Reply, Resp. Concerning Disputed Facts ¶¶ 1–2.)  Plaintiff's representatives stated that they

were looking out for Defendant's best interests and were giving him a discount.  (*Id.*, Statement

of Additional Disputed Facts ¶¶ 3, 5; *admitted in relevant part at* Pl.'s Reply., Resp. Concerning

Disputed Facts ¶¶ 3, 5.)  Plaintiff represented to Defendant that similar new equipment would cost

close to one million dollars.  (*Id.*, Statement of Additional Disputed Facts ¶ 4; *admitted at* Pl.'s

Reply., Resp. Concerning Disputed Facts ¶ 4.)

Subsequent to Defendant's execution of the Agreement, Plaintiff provided Defendant

with: (1) training concerning nuclear medical imaging processes and procedures; and (2)

assistance in obtaining a nuclear medical license.  (Pl.'s Br., Statement of Undisputed Material

Facts ¶¶ 7–8; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Facts ¶¶ 7–8.)

Defendant admits he has not paid for these benefits, but "does feel that he owes [Plaintiff]

payment for these two benefits."  (*Id.*, Statement of Undisputed Material Facts ¶ 9; *admitted at*

Def.'s Resp., Resp. to Statement of Undisputed Facts ¶ 9.)

In or about June 2005, one of Plaintiff's competitors approached Defendant and solicited

him to purchase a product and services that competed with the System.  (*Id.*, Statement of

Undisputed Material Facts ¶ 10; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed

Facts ¶ 10.)  Defendant signed a contract to purchase the equipment and services from the

competitor.  (*Id.*, Statement of Undisputed Material Facts ¶ 11; *admitted at* Def.'s Resp., Resp. to

Statement of Undisputed Facts ¶ 11.)  The equipment Defendant purchased from the competitor

included, *inter alia*, a new, rather than remanufacutred, gamma camera.  (*Id.*)  After purchasing

the competitor's goods, Defendant avoided Plaintiff's calls concerning delivery of the System.

(*Id.*, Statement of Undisputed Material Facts ¶ 12; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Facts ¶ 12.)  On the occasions Defendant accepted Plaintiff's calls, Defendant would represent that he was not yet ready for delivery of the System and indicate that he would speak to Plaintiff about same "in another two or three months."  (*Id.*, Statement of Undisputed Material Facts ¶¶ 13–14; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Facts ¶¶ 13–14.)  After several months of this behavior, Defendant disclosed to Plaintiff that he had purchased the subject equipment from another vendor.  (*Id.*, Statement of Undisputed Material Facts ¶ 15; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Facts ¶ 15.)  Defendant maintains he believed that he unilaterally canceled the Agreement.  (*Id.*, Statement of Undisputed Material Facts ¶ 16; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Facts ¶ 16.)

On November 4, 2005, Plaintiff's counsel sent a letter to Defendant in order to determine his intentions and warn him of the possibility of a lawsuit in the event he failed to satisfy his obligations under the Agreement.  (*Id.*, Statement of Undisputed Material Facts ¶ 17; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Facts ¶ 17.)  Defendant ignored the letter and Plaintiff filed suit.  (*Id.*, Statement of Undisputed Material Facts ¶ 18; *admitted at* Def.'s Resp., Resp. to Statement of Undisputed Facts ¶ 18.)

**2.**    ***Procedural History***

On January 11, 2006, Plaintiff filed a complaint in this court asserting claims for breach of contract, promissory estoppel, unjust enrichment, and breach of the covenant of good faith and fair dealing.  (Compl. [filed Jan. 11, 2006] [hereinafter "Compl."].)  On February 17, 2006, Defendant filed an answer and counterclaims.  (Answer, Countercl. and Jury Demand [filed Feb.

17, 2006].)  On April 6, 2006, Defendant filed an amended answer and counterclaims, in which he asserts thirteen affirmative defenses and two counterclaims.  (Am. Answer, Countercl. and Jury Demand [filed Apr. 6, 2006] [hereinafter "Answer"].)  Defendant's counterclaims are for fraud and negligent misrepresentation.  (*Id.* at 9–10.)  His affirmative defenses, which the court combines in the interest of clarity and conciseness, are as follows: (1) Plaintiff has failed to state a claim upon which relief may be granted; (2) the doctrines of unclean hands, estoppel, waiver, laches, frustration, impossibility, fraud, misrepresentation, unilateral mistake, and mutual mistake bar Plaintiff's claims; (3) failure of consideration, prior breaches, and anticipatory breaches bar Plaintiff's claims; and (4) Plaintiff's failure to comply with a condition precedent and failure to mitigate damages bar its claims.  (*Id.* at 6–7.)

On September 11, 2006, Plaintiff filed a motion for summary judgment that failed to comply with this court's practice standards.  (Nuclear Cardiology Sys., Inc.'s Mot. for Summ. J. and Mem. of Authorities [filed Sept. 11, 2006].)  On October 18, 2006, Plaintiff filed an amended, compliant motion, in which it argues that this court ought dismiss Defendant's counterclaims and affirmative defenses because he cannot raise a genuine issue of fact as to Plaintiff's alleged fraud or negligent misrepresentation.  (Pl.'s Br.)  Also on October 18, 2006, Defendant filed a response to the motion.  (Def.'s Resp.)  On November 20, 2006, Plaintiff filed a reply in support of its motion.  (Pl.'s Reply.)

## ANALYSIS

### 1.     Legal Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2007); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2007). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed

in the light most favorable to the party opposing summary judgment.  *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

**2.      *Evaluation of Claims***

Plaintiff argues it is entitled to summary judgment on Defendant's counterclaims for fraud and negligent misrepresentation as well as his affirmative defenses concerning fraud.  (Pl.'s Br.) At the outset, the court notes its bewilderment at Plaintiff's choice to seek summary judgment on a *defense* as opposed to a *claim*.  Of course, it is true that "the question whether a particular affirmative defense is sufficiently supported by testimony to go to the jury may often be resolved on a motion for summary judgment."  *United States v. Bailey*, 444 U.S. 394, 413 (1980). Existing case law is replete with instances of a defendant asserting entitlement to summary judgment based on affirmative defenses and plaintiffs seeking to discount said defenses in order to preclude entry of summary judgment.  *See, e.g.*, *Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1311 (10th Cir. 2006) (noting that "in order to prevail at the summary judgment stage, the employer must prove at least one affirmative defense so clearly that no rational jury could find to the contrary").

However, this court finds no instance in which this issue has been broached by a plaintiff seeking to discount defenses without seeking or defending against summary judgment on his own claims.  It is therefore not surprising that Plaintiff points to no precedent for its motion.  (*See* Pl.'s Br.)  This court applies the long-existing and well-supported standard that summary judgment is not appropriate "if the judgment would not be dispositive of [a] claim."  *See Wichita v. U.S. Gypsum Co.*, 828 F. Supp. 851, 869 (D. Kan. 1993), *overruled on other grounds by* 72 F.3d 1491

(10th Cir. 1996).  Accordingly, Plaintiff's motion for summary judgment on Defendant's

affirmative defenses is denied.[1]

Turning to the aspects of Plaintiff's motion relating to Defendant's *counterclaims*, the

court notes that Defendant has based his fraud and negligent misrepresentation claims on the

following representations allegedly made by Plaintiff:

> 1. The price [Plaintiff] charged [Defendant] for the [System] was below the
> prevailing market price for a camera [sic] of this type and quality;
>
> 2. [Defendant] could not buy the [System] anywhere else for a lower price;
>
> 3. [Two of Plaintiff's employees] purposely led [Defendant] to believe that they
> were looking out for his best financial interest in buying [sic] the [System];
>
> 4. [Plaintiff's] representatives stated that [a] similar new [System] would cost close
> to a [sic] million dollars;
>
> 5. [Defendant] would be given a substantial discount on the standard prevailing
> market price so the [sic] he would be paying substantially less than [a System]
> could [sic] be purchased elsewhere; [and]
>
> 6. The prevailing market price for the [System] is above $170,000.

(Def.'s Resp. at 6.)  Defendant asserts that: (1) all of these statements were false; and (2) Plaintiff

"induced him with the above stated [sic] misrepresentations to purchase its refurbished [sic]

---

[1]Beyond the inherent procedural problems discussed, Plaintiff does not deign to specify
precisely which of the affirmative defenses it seeks to defeat.  (*See* Pl.'s Br.)  "A brief must make
all arguments accessible to the judges, rather than ask them to play archaeologist with the
record."  *Desilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999).  This court has no desire to
go digging.  The unfortunate combination of counsel's procedural contortions and substantive
omissions seals the motion's fate.

equipment." (*Id.*)  Plaintiff argues it is entitled to summary judgment because Defendant cannot

establish a material issue of fact as to the fundamental elements of his claims.  (Pl.'s Br.)

      ***a.***     ***Negligent Misrepresentation***

      Defendant's counterclaim for negligent misrepresentation is easily eliminated.  in

Colorado, "'[t]o establish a claim for negligent misrepresentation, it must be shown that the

defendant supplied false information to others in a business transaction, and failed to exercise

reasonable care or competence in obtaining or communicating information on which other parties

justifiably relied.'" *Guardian Title Agency, LLC v. Matrix Capital Bank*, 141 F. Supp. 2d 1277,

1283 (D. Colo. 2001) (quoting *Mehaffy, Rider, Windholz & Wilson v. Central Bank Denver,*

*N.A.*, 892 P.2d 230, 236 [Colo.1995]).  "A necessary element of a claim for negligent

misrepresentation is that the defendant gave information to the plaintiff for use in a business

transaction with a third party." *Van Heerden v. Total Petroleum*, 942 F. Supp. 468, 474 (D.

Colo. 1996).  Here, Defendant, in his role as counterclaim plaintiff, alleges that he relied on the

statements in question in signing the Agreement and making "investments to renovate his office in

anticipation of acquiring the machine from Plaintiff." (*See* Compl. ¶ 20.)  This court is puzzled as

to how Defendant might use Plaintiff's statements concerning Defendant's best interests and the

market price for gamma cameras in renovating his office, the only third-party business transaction

Defendant raises in his claim.  (*Id.*)  Nonetheless, the issue is moot, for — as will be discussed

below in the court's analysis of his fraud claim — Defendant has not raised an issue of fact as to

the falsity of the statements.  Accordingly, Plaintiff is entitled to summary judgment on

Defendant's negligent misrepresentation counterclaim.

### b.    Fraud

As to Defendant's fraud claim, in Colorado, the elements are as follows:

(1) a false representation of a material fact or a concealment of a material existing fact; (2) knowledge on the part of the one making the representation that it is false or knowledge that he is concealing a material fact that in equity or good conscience ought to be disclosed; (3) ignorance on the part of the one to whom the representation is made or from whom such fact is concealed of the falsity of the representation or of the existence of the fact concealed; (4) the representation or concealment is intended to be acted upon; (5) action is taken on the representation or concealment that causes damages.

*Chase v. Dow Chem. Co.*, 875 F.2d 278, 281 (10th Cir. 1989) (citation omitted.)  Plaintiff asserts that Defendant's fraud claim must fail because: (1) Defendant cannot raise a genuine issue of fact as to whether Plaintiff's statements were false or whether Plaintiff knew the representations were false when it made them; (2) Defendant had access to all relevant information about the price of the System before signing the Agreement; and (3) Defendant's only supportive evidence is inadmissible hearsay.  (Pl.'s Br. at 7–12.)  The court need only address Plaintiff's first argument.

Plaintiff asserts Defendant cannot show that: (1) all of the statements at issue were false; and (2) Plaintiff knew the statements were false.  (*Id.* at 10–11; Reply at 6–7, 9–11.)  The court agrees and analyzes each statement and the parties' arguments concerning same below.  The first statement in question is Plaintiff's representation that the price it charged Defendant for the System "was below the prevailing market price for a camera of this type and quality."  (Def.'s Resp. at 6.)  Defendant's evidence to support the purported falsity of this statement exists in the form of price quotes that he received from other vendors for gamma camera systems with *different specifications than those he agreed to purchase from Plaintiff*.  The System

contemplated in the Agreement included a remanufactured gamma camera, a new computer and printer, a new monitor, a new "hot lab," training, licensing, and uninterruptible power supplies. (*Id.*, Ex. B at 1–2 [Agreement].)  Defendant compares the price of the gamma camera included in the System with the prices of the new gamma camera he actually paid for and received, as well as "the price for used and refurbished cameras." (*Id.*, Ex. A at 118 [Def. Dep.].)

This court does not purport to be an expert in the field, but notes the disparity of the comparators Defendant presents.  First, the brands of the comparator gamma cameras are all different from that contained in the System.  The System contemplates a RS 7500 75T Orbitor SPECT gamma camera and a Digitrac system, while the other vendors evidently were prepared to sell Defendant: (1) a Digirad Caridus-2 imaging system; (2) an Adac Genesys single head nuclear camera; (3) a DS7 SPECT gantry, stand, and detection system with an SMV power station; and (4) a G. Picker/Marconi Prism 3000 gamma camera. (*Id.*, Ex. B [Agreement], Exs. C–F [Competitor Bids].)  While the court is unfamiliar with the specifics of the effect on the price  that the difference in brand might create in the nuclear medical imaging industry, there can be little doubt that the difference is significant.  To accept otherwise would be contrary to all common understandings of commerce.  More simply stated, one ought have very distinct ideas on the proper price for a Ford as opposed to a Ferrari, although they are both automobiles.  Further, there are several retail categories for gamma cameras: new, used, refurbished, reconditioned, and remanufactured. (*See* Pl.'s Br., Ex. 9 at 14–17 [M. Rose Dep.]; *see also* Eclipse Systems, http://www.eclipsesys.com/Equipment.asp [explaining difference] [last visited August 7, 2007].) Remanufacturers are overseen by the Federal Food and Drug Administration, while refurbishers,

reconditioners, and sellers of used gamma cameras are not.  (*See* Pl.'s Br., Ex. 9 at 17 [M. Rose

Dep.]; *see also* http://www.eclipsesys.com/Equipment.asp.)  Accordingly, it stands to reason that

the price of a particular gamma camera might very well differ if it is new as opposed to used, or

remanufactured as opposed to refurbished, and so on among the comparative categories.

Defendant's discovery and comparison of Plaintiff's System with "the price for used and

refurbished cameras" of different brands and models simply does not establish the falsity of

Plaintiff's statement that the System contained a remanufactured gamma camera priced below the

"prevailing market price for a camera [sic] of this *type and quality*."  (Def.'s Resp. at 6 [emphasis

added].)  Had Defendant troubled himself to discover what other vendors charged for the same

camera in the same condition that Plaintiff offered, the court's analysis might be different.

Defendant's arguments concerning Plaintiff's remaining statements suffer from the same

obvious flaws.  Unfortunately for Defendant's claim concerning Plaintiff's representation that he

could not buy the System anywhere else for a lower price, he did not receive quotes from the

other vendors with whom he spoke on the *same product*.  (*Id*. at 6.)  In addition to the differences

discussed above, the price quotes that Defendant offers in support of his claims are all on either

stand-alone cameras or gamma camera systems that have different cameras, different

specifications, and different amenities.  For instance, none of the ostensibly comparative bids

involves a system like Plaintiff's that has uninterrupted power sources or a package including

licensing services and training, let alone the same components in the same condition Plaintiff was

offering.  (*See id.* Ex. B [Agreement], Exs. C–F [Competitor Bids].)  Again, this court does not

fancy itself to be an expert in the field of nuclear medical imaging and would not dare to speculate

as to the value of the above-mentioned amenities or the proper comparative expense of one machine over another. Nonetheless, the court is at an utter loss to ascertain the applicability of the prices of other, different systems to prove the truth or falsity of a representation concerning the price or value of the System. While it may be true that Plaintiff's competitors sold cheaper camera systems that would have suited Defendant's needs, Defendant's proffered bids are proverbial apples compared to the System orange. With these bids, Defendant wholly fails to raise an issue of fact as to the representation.

Defendant's arguments as to Plaintiff's employees who "purposely led [Defendant] to believe that they were looking out for his best financial interest in buying [sic] the [System]" also fail, and fail miserably. (Def.'s Resp. at 6.) As discussed above, Defendant has not bothered to raise an issue of fact as to whether Plaintiff somehow misrepresented the price or value of the System or its components through his utter failure to show that other vendors sold the System at a lower price. Due to his failure to provide sufficient information for the court to adjudge the propriety of the System price, Defendant simply has not raised an issue of fact as to the truth or falsity of Plaintiff's statements concerning that price or its intentions in offering the price it did.

Defendant's attempts to maintain his claims based on Plaintiff's statements that a "similar new [System] would cost close to a [sic] million dollars" border on the comical. (*Id*.) One of the comparator bids that Defendant has provided the court lists the cost of a 1990 used G. Picker/Marconi Prism 3000 gamma camera at $9,750. (*Id.*, Ex. E at 2 [Competitor Bids].) Even though the camera is used, of a different brand, and may be a different age than the camera contemplated in the System, because Defendant himself has suggested comparison to the System,

-13-

the court is comfortable assuming that the camera is sufficiently "similar" for the requisite

analysis. (*See id*. at 6.)  The Picker/Marconi bid reflects that the camera's "[l]ist" price if it were

new would be "$1,080,000."  (*Id.*, Ex. E at 2 [Comparator Bid].)  Counsel's hubris astounds this

court.  Not only does Defendant's evidence not oppose Plaintiff's motion, it actually *supports* it.

In light of the new gamma camera price quote at one million dollars, proffered by Defendant

himself, this court can find no genuine issue of fact that Plaintiff's representation to the same

effect is false.

Defendant's fifth allegation supporting his claims requires some unpacking.  Defendant

contends that Plaintiff told him he "would be given a substantial discount on the standard

prevailing market price so the [sic] he would be paying substantially less than [a System] could

[sic] be purchased elsewhere."  (*Id.* at 6.)  In his statement of additional disputed facts,

Defendant asserts that Plaintiff made this statement, which Plaintiff denies.  (*Id.*, Statement of

Additional Disputed Facts ¶ 5; *denied at* Pl.'s Reply, Resp. Concerning Disputed Facts ¶ 5.)  To

support his factual assertion, Defendant cites the following testimony from his deposition:

"[Plaintiff] made those statements regarding the standard price on the market.  [Plaintiff] made

further statements about being nice to me, and substantially being down one step, and then a

discount added further.  All of these statements would be false from anyone who knows the

market as I know it today."  (*Id.*, Ex. A at 35 [Def. Dep.].)  From this testimony, the court cannot

even conclude that Plaintiff made the statement to which Defendant refers.  However the point is

moot.  Even if Defendant had sufficiently proven that Plaintiff made the statement, without price

point comparisons on the same product, this court has no means by which to adjudge the

statement's veracity.  Defendant has utterly failed to meet his burden to raise an issue of fact as to the falsity of Plaintiff's alleged representation concerning discounts.

Defendant's argument concerning Plaintiff's sixth alleged statement suffers the same fate as that concerning the fifth.  Because Defendant has failed to provide proper comparators or even expert testimony as to the market price of gamma camera systems, Defendant has failed to raise a genuine issue of fact concerning the veracity of Plaintiff's statement that "[t]he prevailing market price for the [System] is above $170,000."  (*Id.* at 6.)

Defendant's fraud claim is truly doomed, for even if the court were to suspend all reason and disbelief and assume, *arguendo*, that Defendant has established the falsity of the statements discussed above with the paltry evidence he presents, he has done nothing to raise an issue of fact as to whether Plaintiff was aware of their purported falsity at the time it made them.  Defendant's only arguments to establish Plaintiff's knowledge are that: (1) Plaintiff assured Defendant that it was "very familiar with the market," but Defendant's own subsequent investigation revealed "that the equipment in question could be obtained on the market for substantially less;" and (2):

> [i]t is not likely, and certainly not reasonable that a company with over [twenty] years of expertise in manufacturing and selling nuclear cardiology equipment would not be aware of the following: (1) the prevailing market price; (2) the availability of similar equipment at a lower price; (3) what price would be in Defendant's best financial interests; (4) the cost of purchasing new equipment; (5) what a substantial discount is off [sic] the prevailing market price; and (6) whether $170,000 is below the prevailing market price for the [System].

(*Id.* at 11, Ex. A at 31 [Def. Dep].)

The patently obvious evidently eludes Defendant.  *Defendant's* familiarity with the market plainly cannot serve to create a genuine issue of fact as to *Plaintiff's* knowledge.  Nor can

Defendant's *speculation* concerning Plaintiff's knowledge serve to create an issue of *fact. See Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988) (stating that a party's "mere conjecture . . . is an insufficient basis for denial of summary judgment"). Alas, it appears that unlike Smokey Robinson, Defendant lacks a figure in his life who "told [him] [he]'d better shop around." THE MIRACLES, *Shop Around*, *on* HI . . . WE'RE THE MIRACLES (Tamla Records [Motown] 1960). While this fact may be lamentable, neither it nor any other evidence Defendant has presented to this court is sufficient to support his counterclaims or defeat summary judgment.

**3.    Conclusion**

Based on the foregoing it is therefore ORDERED that:

1.      Plaintiff's motion (# 41) is GRANTED in part and DENIED in part. The motion is denied as to Defendant's "fraud-based" affirmative defenses. The motion is granted as to Defendant's fraud and negligent misrepresentation counterclaims. Upon entry of final judgment, the clerk shall enter judgment on Defendant's counterclaims in favor of Plaintiff and against Defendant, dismissing the counterclaims with prejudice.

2.      The court will hold a Final Pretrial Conference on Plaintiff's claims commencing at 3:30 o'clock p.m. on September 14, 2007, in Courtroom A201 of the Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado. In preparing for and participating in the conference, the parties and counsel will (1) follow the Instructions for Preparation and Submission of Final Pretrial Order, a copy of which can be downloaded from the court's web site, specifically http://www.cod.uscourts.gov/forms/ewn_fin_pre_ord_ins.pdf and (2) utilize the

specific template located at http://www.cod.uscourts.gov/forms/ewn_fin_pre_ord.wpd  These

specific web addresses should be used to insure that the proper format is observed.


Dated this 9th day of August 2007


BY THE COURT:


s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
Chief United States District Judge